HANOVER INSURANCE COMPANY *vs.* DONALD A.
GAUDETTE.

Worcester. September 7, 1990. - November 15, 1990.

Present: LIACOS, C.J., NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Insurance*, Motor vehicle insurance, Underinsured motorist. *Words*,
"Damages due."

A plaintiff, seriously injured in an automobile accident due to the negli-
gence of a municipal employee, was not entitled to recover under the
underinsurance provisions of his own standard automobile liability pol-
icy in excess of the $100,000 limit of liability imposed by G. L. c. 258,
§ 2, which the plaintiff had received in settlement of his claim against
the municipality. [592-594]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 15, 1988.

The case was heard by *William C. O'Neil, Jr.*, J., on a ·
statement of agreed facts.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Alice J. Klein* for the defendant.

*Craig D. Murphy* for the plaintiff.

O'CONNOR, J. This is a declaratory judgment action in
which a judge in the Superior Court declared that the de-
fendant, Donald A. Gaudette, is not entitled to recover under
the underinsurance provisions of a standard Massachusetts
automobile liability insurance policy issued by the plaintiff
insurer (Hanover). Gaudette appealed to the Appeals Court,
and we transferred the case to this court on our own initia-
tive. We affirm the judgment.[1]

---

[1]This case was first submitted to an arbitrator who determined that
Gaudette was not entitled to recover from Hanover. In the present action,
the judge did not purport to confirm the arbitrator's decision but instead

The judge found that, while Gaudette was insured under a policy issued by Hanover containing underinsurance coverage in the sum of $20,000, he was seriously injured in an automobile accident due to the negligence of an employee of the city of Worcester. Gaudette accepted $100,000 in settlement of his claim against the city and executed a release. The judge also found that, were it not for the $100,000 limit of liability imposed by G. L. c. 258, § 2 (1988 ed.), Gaudette's damages would have been assessed at more than $120,000.

In concluding that Gaudette was not entitled to recover from Hanover, the judge reasoned: "The language of M. G. L. Chapter 175, Section 113L, seeks to provide protection to those who are legally entitled to recover damages from owners of motor vehicles whose policies are insufficient in limits of liability to satisfy said damages. This is not a case where the damages exceed the coverage. Mr. Gaudette was legally entitled to recover no more than $100,000 from the city and was not legally entitled to recover a sou from the operator. He therefore has no entree to the funds of Hanover. This interpretation is enforced by the fact that a company paying out under an underinsured policy clause is given a right of subrogation against the original tortfeasor (here the city) but having paid out the $100,000 the city unlike a tortfeasor that has only partially satisfied its obligations has no further legal exposure to Mr. Gaudette or his assigns or subrogees."

The judge's result and reasoning are entirely correct. General Laws c. 175, § 113L (1988 ed.), provides in relevant part that "[n]o policy shall be issued or delivered in the commonwealth with respect to a motor vehicle . . . registered in this state unless such policy provides coverage . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of insured motor vehicles . . . whose policies or bonds are insufficient in limits of liability to satisfy said damages, to the extent that

---

made the declaration set forth above. Neither party argues that the arbitrator's decision was a final disposition of the case.

said damages exceed the limits of liability subject to the terms of the policy." The policy issued to Gaudette was obviously designed by Hanover to meet the Legislature's concern, and did so.

The policy included the following language under the heading, "Part 3. Bodily Injury Caused by an Uninsured or Underinsured Auto": "We consider an auto to be underinsured if the insurance, bonds or self-insurance covering the auto or operator is not sufficient to pay for the damage sustained by the injured person . . . . If the legally responsible person is insured, we will pay only if the limits of the responsible person's auto insurance policies, bonds or self-insurance are less than the amount of damages due the injured person. In that case, we will pay the balance of the damages up to the limits shown for this Part on your Coverage Selections Page." If the first quoted policy provision stood alone, it might be fairly arguable that the underinsurance coverage was intended to indemnify the insured for the difference between the fair value of the insured's injuries, i.e., the "damage sustained by" him and the wrongdoer's liability insurance limit, although such coverage would go beyond that required by G. L. c. 175, § 113L. However, the next quoted provision makes clear that that is not so, that is, that, in keeping with the statutory mandate, the insurer "will pay only if the limits of the responsible person's [here, the city's] auto insurance policies, bonds, or self-insurance are less than the amount of *damages due* the injured person [here, $100,000]" (emphasis added). The words "damages due the injured person" can only fairly be construed as referring to the compensation that would be recoverable by the insured from the wrongdoer in court. See Black's Law Dictionary 389 (6th ed. 1990) ("*Damages.* A pecuniary compensation or indemnity, which may be recovered in the courts by any person who has suffered loss, detriment, or injury, whether to his person, property, or rights, through the unlawful act or omission or negligence of another. A sum of money awarded to a person injured by the tort of another. Restatement, Second, Torts, § 12A. Money compensation sought or awarded as a

remedy for a breach of contract or for tortious acts"). Since the "damages due" Gaudette are no greater than the sum Gaudette recovered from the city, the judge correctly concluded that Gaudette was not entitled to recover from Hanover.

It is true, as Gaudette argues, that the Legislature's purpose in mandating underinsurance coverage was to provide automobile accident victims with fair compensation for their injuries, but nothing in G. L. c. 175, § 113L, or in any other Commonwealth statute suggests a legislative intent to provide a person such as Gaudette in the circumstances of this case with compensation in excess of the $100,000 limit imposed by G. L. c. 258, § 2. Nothing in *MacInnis* v. *Aetna Life & Casualty Co.*, 403 Mass. 220, 225 (1988), relied on by Gaudette, suggests otherwise.

*Judgment affirmed.*