788 A.2d 955

Michelle C. KMONK–SULLIVAN, George Laufer, Mary Marano, Abby L. Resnick, Lesia Cuccaro, Joseph Dziniak, Frank Scialabba, Cristy Holmes, Joseph Orth, Lisa Hopson, Jennifer Eggan, James Fierle, Donald Greg, Theodore Romano, Theodore J. Slippy, Robert Whalen, Mary Ann Woods, Geraldine Young, Jamie Winkler, Christena Kovatch, Jerry Kovatch, Christopher Blickenderfer, Joyce Calabrese, Richard Carryer, Shannon Moore, Eileen Rhodes, Doris Robinson, Robert Mowery, Jean Ryer, Nan Camp, Donna Tieren, John Caskey, Gloria Somerhalder, Karen Weil,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Nationwide Insurance Companies, Commercial Union Insurance Companies, Prudential Insurance Company Of America, Aetna, Inc, Erie Insurance Group, Allstate Insurance Company, Progressive Casualty Insurance Company, Metropolitan Life Insurance Company, Liberty Mutual Insurance Group, American States Insurance, Todd Prugar, Patricia Madden, Janet Bradley, Susan Johnson, Paul Johnson, Cather-

ine Dahlgaard, Donald Edgar, Elaine Kruzynski, Lawrence Pavlok, Joseph Etheridge, Stephanie Beck, Joint Appeal of Nationwide Insurance Companies, Commercial Union Insurance Companies, Prudential Insurance Company of America, Aetna, Inc., Erie Insurance Group, Allstate Insurance Company and American States Insurance.

Sandra W. Midili, In her own right, and as Executrix of the Estate of Arnold W. Midili, Deceased,

v.

Erie Insurance Group, Joint Appeal of Nationwide Insurance Companies, Commercial Union Insurance Companies, Prudential Insurance Company of America, Aetna, Inc., Erie Insurance Group, Allstate Insurance Company and American States Insurance.

Supreme Court of Pennsylvania.

Argued Sept. 10, 2001.

Decided Dec. 19, 2001.

516

Dale G. Larrimore, Philadelphia, for PA Trial Lawyers Ass'n, amicus curiae.

Stephen McCloskey, for Erie Ins. Group.

Avrum Levicoff, for Aetna & Surety Co.f

Daniel P. McDyer, Pittsburgh, for American States Ins. Co.

Larry Alan Silverman, Robert J. Marino, Pittsburgh, for Allstate Ins. Co.

James C. Haggerty, Philadelphia, for Nationwide Ins. Co.

Scott J. Tredwell, Philadelphia, for Nationwide Ins. Companies, et al.

Peter B. Skeel, Lauren M. Wylie, for Prudential Ins. Co. of America.

Gary Stephen Turetsky, Philadelphia, for Selective Ins. Group, Inc., amicus curiae.

John P. Gismondi, Pittsburgh, for Kmonk–Sullivan.

John A. Tumolo, Pittsburgh, for Sandra W. Midili.

Steven Craig Gillman, Philadelphia, for Martin and Allen, amicus curiae.

Before JOHN P. FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN, and SAYLOR, JJ.

## OPINION

NEWMAN, Justice.

This appeal involves multiple underinsured motorist (hereinafter "UIM") claims in two independent cases. The plaintiffs commenced their claims against their insurers after they were unable to obtain full recoveries from the government entities that caused their injuries because of the statutory limits on the amount of damages that a Commonwealth or local agency may be required to pay pursuant to Sections 8528 and 8549 of the Judicial Code, 42 Pa.C.S §§ 8528 and 8549, respectively. The issue in this case is whether the Appellant-insurers' policy exclusion of government vehicles from the definition of under-

insured motor vehicles violated the Motor Vehicle Financial Responsibility Law (hereinafter "MVFRL"), 75 Pa.C.S. §§ 1701–1799.

### FACTS AND PROCEDURAL HISTORY

Before turning to a discussion of the legal issue, we set forth the facts and procedural history of the two cases, *Kmonk–Sullivan v. State Farm Mutual Automobile Insurance Company* and *Midili v. Erie Insurance Group.*

#### Kmonk–Sullivan v. State Farm Mutual Automobile Insurance Company

In *Kmonk–Sullivan,* approximately fifty passengers on a Port Authority of Allegheny County (hereinafter "PAT") bus sustained injuries when it collided head-on with another PAT bus. PAT is a Commonwealth agency and is therefore subject to the statutory provisions for sovereign immunity and exceptions to sovereign immunity pursuant to the Judicial Code. The Judicial Code provides that, in an action against the Commonwealth arising from the "same cause of action or transaction or occurrence," the damages the Commonwealth must pay are limited to no more than $250,000.00 for any one person or a total of $1,000,000.00. 42 Pa.C.S. § 8528(b).

PAT filed an interpleader action in the Court of Common Pleas of Allegheny County and paid the injured individuals $1,000,000.00. Unfortunately, once the money was distributed among the injured individuals, it only satisfied approximately one-third of their damages.

Thereafter, thirty-four of the injured individuals filed UIM claims with their own automobile insurance carriers (Appellant-insurers) to recover the remaining portion of their damages. Based on the exclusions in each policy, which explicitly excluded governmental vehicles from the definition of an underinsured vehicle, the insurers denied the claims.

The injured individuals filed an application for declaratory judgment in the Court of Common Pleas of Allegheny County. The trial court entered an Adjudication and Decree Nisi on

stipulated facts in favor of the insureds finding that "a statutory damage cap on the amount of damages does not preclude a claimant from being legally entitled to recover damages." *Kmonk–Sullivan v. State Farm Mutual Automotive Ins. Co.,* GD 97–01115, slip. op. at 5 (Allegheny Co. Ct. of Commom Pleas, Oct. 10, 1997). On December 10, 1997, the trial court then denied the insurers' post-trial motions and entered a final judgment.

The insurance companies filed an appeal with the Superior Court. On September 3, 1998, a three-judge panel reversed the trial court. However, on April 1, 1999, the Superior Court granted the insureds' Application for Reargument. The Superior Court *en banc* affirmed the decision of the trial court in favor of the insureds and concluded that the government vehicle exclusions impermissibly conflicted with the provisions of the MVFRL and violated public policy. *Kmonk–Sullivan v. State Farm Mutual Automobile Insurance Co.,* 746 A.2d 1118 (Pa.Super.1999).

### Midili v. Erie Insurance Group

In the second case in this appeal, Arnold W. Midili died in an automobile accident in which a motor vehicle operated by an employee of Allegheny County struck the car he was driving. There is no dispute that the death of Mr. Midili resulted from the negligent conduct of the county employee. Allegheny County paid Sandra Midili, the decedent's wife, $500,000.00, the maximum amount payable for a single tort claim against a local government unit pursuant to 42 Pa.C.S. § 8553(b).

Mrs. Midili then submitted a claim to Erie Insurance Group (hereinafter "Erie") in an attempt to recover $300,000.00 in UIM benefits pursuant to the personal automobile insurance policy Erie had issued to her and her decedent-husband. Notwithstanding that Erie admitted that Mrs. Midili's total damages exceed $800,000.00, it refused to pay the claim. Erie denied coverage because it concluded that the government vehicle exclusion in its policy precluded Mrs. Midili from recovering UIM benefits, given that Mr. Midili was killed in

an automobile accident caused by the negligence of a county employee while operating a government vehicle.

On June 20, 1997, a board of arbitrators found in favor of Erie. On October 27, 1997, a Washington County trial court adopted the arbitrators' decision, and refused Mrs. Midili's motion to vacate the award.

Mrs. Midili filed an appeal to the Superior Court. On September 3, 1998, a three-judge panel of the Superior Court upheld the denial of benefits to Mrs. Midili. The Superior Court granted reargument, and on April 1, 1999, the court *en banc* heard argument in *Midili* and *Kmonk–Sullivan, supra* at the same time.

Consistent with *Kmonk–Sullivan,* the Superior Court determined that the government vehicle exclusion violated the terms of the MVFRL and was against public policy. Therefore, the Superior Court reversed the judgement of the Court of Common Pleas of Washington County, which had upheld the denial of UIM benefits, and remanded with instructions to enter judgment in favor of Mrs. Midili. *Midili v. Erie Insurance Group,* 746 A.2d 1126 (Pa.Super.2000).

## *DISCUSSION*

■ Faced with the Opinions of the Superior Court determining that Appellants (insurers in *Kmonk–Sullivan* and *Midili* (collectively, "insurers") would be required to provide coverage despite their express exclusion of government vehicles from their UIM policies. Insurers sought review, which this Court granted. The insurers assert that the policies define "Underinsured Motor Vehicle" in such a way as to explicitly exclude government vehicles and, thereby, specifically foreclose recovery of UIM benefits when the tortfeasor is a government entity.[1] They reason that an underinsured vehicle is defined as one for which "limits of available ... self-insurance are insufficient" [75 Pa.C.S. § 1702] and that the

---

1. A representative policy provided:
 "underinsured motor vehicle" does not include any vehicle: Owned by a governmental unit or agency."
 (Insurers' Brief at 5.)

available limits of the government's self-insurance may not be made insufficient by the damages cap of the Judicial Code. Accordingly, the insurers conclude that they may permissibly exclude government vehicles from coverage because the MVFRL's definition of underinsured vehicles does not include government vehicles.

Insureds in *Kmonk–Sullivan* and *Midili* (collectively "insureds") admit that the insurance companies' policy language is unambiguous, however, they assert that it is not the terms of the policies that are in dispute, but whether the terms violate the provisions of the MVFRL. Insureds argue that because the MVFRL is broad enough to include government vehicles in the definition of "underinsured motor vehicle[s]," the insurers' exclusion of the vehicles from coverage violates the MVFRL.

As we have often observed, when statutes have a bearing on the outcome of a case, we begin by analyzing the express words of the statutes. *Philadelphia Housing Authority v. Commonwealth of Pennsylvania Labor Relations Board*, 508 Pa. 576, 499 A.2d 294, 297 (1985). When the statute is clear, we need go no further to discern the intent of the legislature. Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b). These cases involve the interpretation of MVFRL, its interplay with the waiver of sovereign and governmental immunities with regard to vehicle liability, and a determination of whether the insurers' exclusion of UIM coverage of government vehicles from their insurance policies is inconsistent with the requirement that insurers offer UIM coverage. *See* 75 Pa.C.S.A. § 1731.

Section 1731 of the MVFRL requires insurers to offer their insureds underinsurance coverage. Section 1731(a) provides:

(a) **Mandatory offering.**—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as

provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsurance coverages is optional.

75 Pa.C.S. § 1731(a). UIM insurance provides insureds, who select coverage, with a source of recovery when a tortfeasor lacks sufficient resources to compensate them fully. UIM coverage is designed to "provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle, and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles." 75 Pa.C.S § 1731(c). Section 1702 of the MVFRL defines an underinsured motor vehicle as "a motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." 75 Pa.C.S. § 1702.

The other statutes relevant to the present matter relate to sovereign immunity (42 Pa.C.S. § 8521) and the extent to which the Commonwealth has waived it (42 Pa.C.S. § 8522). As sovereign, the Commonwealth determines whether and the extent to which parties may recover damages from it. *Id.* Section 8521 provides:

> Except as otherwise provided in this subchapter [Subchapter B Actions Against Commonwealth Parties], no provision of this title shall constitute a waiver of sovereign immunity for the purposes of 1 Pa.C.S. § 2310 (relating to sovereign immunity reaffirmed; specific waiver) or otherwise.[2]

42 Pa.C.S. § 8521.

 Insurers imply that Insureds are not "legally entitled" to recover damages because they have already received all they are entitled to from the government entities.[3] Insurers'

---

**2.** 1 Pa.C.S. § 2310 provides in relevant part:

**§ 2310. Sovereign immunity reaffirmed; specific waiver**
Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.

**3.** Section 8528(b) sets forth the limits of the amount of damages recoverable from the Commonwealth with regard to a non-immune claim. Section 8528(b) provides:

Brief at 11, 12. This argument is not without some appeal. Section 1731(c) provides that UIM coverage shall protect "persons who suffer injury arising out of the maintenance or use of a motor vehicle and are *legally entitled* to recover damages . . . ." (emphasis added). 75 Pa.C.S. § 1731(c). Insurers assert that Insureds fail to satisfy the requirements of 75 Pa.C.S. § 1731(c) because they are not "legally entitled" to recover damages.

However, 42 Pa.C.S. § 8522 provides that sovereign immunity shall no longer be a defense with regard to certain specified claims, including those involving a Commonwealth vehicle. Section 8522(b)(1) provides in pertinent part:

**(b) Acts which may impose liability.**—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

**(1) Vehicles liability.**—The operation of any motor vehicle in the possession or control of a Commonwealth party.

Similarly, 42 Pa.C.S.A. § 8542 provides that governmental immunity shall no longer be a defense with regard to certain specified claims, including those involving an agency vehicle. Section 8542(b) provides in pertinent part:

**(b) Acts which may impose liability.**—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

(1) *Vehicle liability.*—The operation of any motor vehicle in the possession or control of the local agency. . . .

As a result of the Commonwealth and local agency waivers of immunity, with regard to "the operation of any motor vehicle in the possession or control of . . . a Commonwealth party" (42 Pa.C.S. § 8522(b)) or local agency (42 Pa.C.S. § 8542(b)), Insureds' were legally entitled to recover damages. Insureds,

Damages arising from the same cause of action or transaction or occurrence or series of causes of action or transactions or occurrences shall not exceed $250,000 in favor of any plaintiff or $1,000,000 in the aggregate.

42 Pa.C.S. § 8528(b).

therefore, satisfied the requirement of Section 1731(c), that UIM coverage provide protection for people who, among other things, are "legally entitled to recover damages . . . ."

■ Insurers' main contention, however, is that the statutory cap may not be used to make the "limits of available . . . self-insurance . . . insufficient" and in that way make a vehicle underinsured. They accurately point out that in this case the statutory cap caused the "limits of available . . . self-insurance [to be] insufficient." 75 Pa.C.S. § 1702. The question for us is whether the reason for the insufficiency is of importance.

To resolve this issue, we return to the words of the MVFRL. An underinsured vehicle is one for which the "limits of available . . . self-insurance are insufficient." 75 Pa.C.S. § 1702. Here, it is clear that: the "limits of available . . . self-insurance are insufficient" to satisfy the damages of Insureds;[4] and, the statute does not limit the circumstances or reasons why the available limits may be made so. Consequently, where the damages cap causes the available limits of underinsurance to be insufficient, the requirements of 75 Pa.C.S. § 1702 are met.

Furthermore, the Motor Vehicle Code, 75 Pa.C.S. §§ 101–9622, [of which Section 1702 (defining underinsured vehicles) and Section 1731 (mandating the offering of underinsurance coverage) are part,] applies to government vehicles. The Superior Court correctly observed that "the legislature expressly made the MVFRL applicable to all motor vehicles required by state law to be registered (75 Pa.C.S. § 1712) knowing that Commonwealth agency vehicles are required to be registered by statute. 75 Pa.C.S. §§ 1301 & 1302." *Kmonk–Sullivan,* 746 A.2d at 1122. Therefore, Section 1702 applies to government vehicles.

■ Finally, as the Superior Court explained, the legislature chose to exempt federally owned vehicles from the statute, but did not exclude all government vehicles as the insurance policies purport to do. See 75 Pa.C.S. § 1703. An exception expressly provided in a statute is a strong indication

4. *Kmonk–Sullivan,* 746 A.2d at 1120; *Midili,* 746 A.2d at 1126.

that the legislature did not intend to exclude unexpressed items. 1 Pa.C.S.A. § 1924. As a matter of statutory interpretation, although "one is admonished to listen attentively to what a statute says[;][o]ne must also listen attentively to what it does not say." Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L.Rev. 527, 536 (1947). Accordingly, we agree with Insureds' argument that if the legislature wanted to exclude all government-owned vehicles, it would have done so when it enacted the federal vehicle exclusion. Consequently, but for the alleged effect of the insurance policy exclusion, the MVFRL includes government vehicles.[5]

Insurers' policy exclusion is contrary to the MVFRL because it attempts to withdraw coverage that the legislature required it to offer.[6] We, therefore, agree with the majority of State Appellate Courts that have considered this issue[7] and conclude that the insurance policy definition of underinsured vehicle, which excludes government vehicles, " ... is an unwarranted invasion of the broad coverage required by the

---

**5.** Insurers argue that permitting the limits on the amount of sovereign liability to satisfy the requirement of the MVFRL would require that UIM coverage apply in a broad range of cases in which valid defenses prohibit plaintiffs from recovering against tortfeasors. Appellants' concerns are well taken, however, they will generally be of no moment because UIM coverage applies only where, as here, plaintiffs are "legally entitled" to recover against the subject tortfeasor. 75 Pa.C.S. § 1731(c).

**6.** Insurers also assert that *Hall v. Amica Mutual Insurance Company*, 538 Pa. 337, 648 A.2d 755 (1994), requires that we find that the policy exclusions do not violate the MVFRL. We disagree. *Hall* involved an insurance carrier that refused to pay UIM benefits to a policyholder injured in Barbados because the policy restricted uninsured motorist coverage to the U.S., its territories and possessions. The government vehicle exception is distinguishable from the territorial exclusion at issue in *Hall*, since the former concerns the identity of the underinsured motorist as opposed to a limitation on portability.

**7.** *See, e.g., Gabriel v. Minnesota Mutual Fire and Casualty*, 506 N.W.2d 73 (N.D.1993); *Kyrkos v. State Farm*, 121 Wash.2d 669, 852 P.2d 1078 (1993); *Martin v. State Farm*, 755 S.W.2d 638 (Mo.Ct.App.1988); *Young v. Greater Portland Transit District*, 535 A.2d 417 (Me.1987); *Karlson v. Oklahoma City*, 711 P.2d 72 (Okla.1985); and *Hillhouse v. Farmers Insurance Co., Inc.*, 226 Kan. 68, 595 P.2d 1102. *But see, Hanover Insurance Co., v. Gaudette*, 408 Mass. 591, 562 N.E.2d 815 (1990).

statute and is, therefore, void." *Hillhouse,* 595 P.2d at 1103–1104. Accordingly, the exclusion is ineffective.

Because the government vehicles in *Kmonk–Sullivan* and *Midili* are underinsured motor vehicles as defined by the MVFRL, and are not excluded by that statute, the Superior Court correctly determined that the insurance policies, which purported to apply a more restrictive definition of underinsured motor vehicles, are inconsistent with the statute. Consequently, the government vehicle exclusion cannot stand.

## *CONCLUSION*

We affirm the determinations of the Superior Court, in *Kmonk–Sullivan* and *Midili,* which held that the insurers' government vehicle exclusions impermissibly conflict with the provisions of the MVFRL. We recognize that Superior Court also concluded that the government vehicle exclusion violated public policy. However, because we have concluded that the insurance policy exclusions violate the terms of the MVFRL, and are therefore invalid, we decline to consider the public policy argument.

Justice Saylor files a concurring opinion.

SAYLOR, Justice, concurring.

Applying settled principles of statutory interpretation, including consideration of other pertinent statutes and the understanding that express exceptions exclude others not expressed, *see* 1 Pa.C.S. §§ 1921(c), 1924, the majority determines that the government vehicle exclusion conflicts impermissibly with the provisions of the MVFRL. I agree fully with that determination, and write separately only to address the majority's observation that, the statutory analysis having proved sufficient, public policy need not be considered.

The term "public policy" may be understood to refer to overarching concerns arising from the laws, long governmental practice, or obvious ethical or moral standards, *see Hall v. Amica Mut. Ins. Co.,* 538 Pa. 337, 347–48, 648 A.2d 755, 760

(1994) (citation omitted), and also to a means of determining the intent underlying (and, indeed, declared by) the statute. *See* 1 Pa.C.S. § 1921 (enumerating tools of statutory construction, including reference to the circumstances under which a statute was enacted; the mischief to be remedied; the object to be attained; and the consequence of a particular interpretation). Thus, although I agree with the majority's decision to forego the broader type of policy analysis, I would expressly include public policy considerations, such as those identified by the Superior Court, in any analysis of the terms of the MVFRL. In my view, such considerations are as pertinent as the other tools of statutory construction utilized by the majority. *See id.*